Rachael Lechner, WY Bar No. 7-4568
Lamont Larsen, WY Bar No. 7-5596 (admission pending)
Mark Champoux (p*ro hac vice* pending)
Omeed Azmoudeh (*pro hac vice* pending)
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado, 80202
Telephone:  303.892.9400
Facsimile: 303.893.1379
Email: rachael.lechner@dgslaw.com
          lamont.larsen@dgslaw.com
          mark.champoux@dgslaw.com
          omeed.azmoudeh@dgslaw.com

*Attorneys for Plaintiff Bright Rock Energy LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

Civil Action No.

**Bright Rock Energy LLC**

      **Plaintiff**,

v.

**CNOOC Energy U.S.A. LLC**,

      **Defendant**.

---

## COMPLAINT

---

     Plaintiff Bright Rock Energy LLC ("Bright Rock" or "Plaintiff") for its Complaint against

Defendant CNOOC Energy U.S.A. LLC ("CNOOC" or "Defendant") states and alleges as follows:

### SUMMARY OF THE ACTION

    1.    Bright Rock brings this action due to CNOOC's refusal to abide by its valid and

existing contractual obligations.

    2.    Bright Rock is an oil and gas operator with interests in multiple fields in Wyoming

and Utah.

3.      It is customary in the industry for an operator to enter into agreements with parties who own working interests in a proposed oil and gas well to establish the share of the costs that a working interest owner will contribute to drill and complete the well, and also the corresponding share of net revenues that the working interest owner will receive if and when the well produces. The larger the contribution to the drilling costs that a working interest owner makes, the larger the proportion of net revenues the working interest owner will receive.

4.      Because the cost to drill and complete a well is substantial, such arrangements allow operators such as Bright Rock to reduce the risk associated with drilling a well and extend its own capital resources to a greater number of wells, while also allowing working interest owners to be rewarded handsomely, if the well is profitable, through net revenue interests far greater than they would otherwise be entitled to based on their ownership interest alone.

5.      Bright Rock and CNOOC are parties to just such an agreement, entered into in February 2020 by CNOOC and Bright Rock's predecessor.  In that agreement, CNOOC—which owns an approximate 6% working interest in the proposed Buster Federal Well in Converse County, Wyoming—agreed to contribute 49% of the well's drilling and completion costs in exchange for a 49% share of future net revenue from the well.

6.      Despite having made that promise in a valid written contract, CNOOC now refuses to pay its share of drilling and completion costs.  CNOOC's only excuse is its observation that commodity prices have changed since the time of execution.  CNOOC apparently believes Bright Rock's predecessor should have begun drilling the well immediately after the agreement was signed, prior to any market conditions changing.

7.      But the contract contains no specified time in which Bright Rock or its predecessor must have begun drilling, and changing market conditions is an inherent risk in oil and gas

agreements. When parties want to minimize that risk, they bargain for contractual protections—such as time limitations and termination clauses premised on market changes. CNOOC did not bargain for such protections—doing so would have resulted in a very different agreement that would have necessarily reduced the consideration CNOOC stands to receive otherwise.

8.      Moreover, Bright Rock has not unreasonably delayed the drilling of the Buster Federal Well. Indeed, after the COVID-19 pandemic took hold last year, it was CNOOC that repeatedly expressed its desire that Bright Rock postpone drilling activities until 2021.

9.      Bright Rock is now ready to drill the well, and CNOOC's contention that it need not honor its contractual obligations has no basis in either law or fact.

10.      Without the Court's intervention to declare the parties' rights and obligations under the contract, CNOOC's conduct will cause Bright Rock to suffer substantial harm that will be difficult, if not impossible, to fully quantify or rectify after the fact. Without CNOOC's contributions to the drilling costs, Bright Rock will be hindered in its ability to proceed with the drilling and completion of the Buster Federal Well, which could result in the expiration of Bright Rock's leases and a failure to establish a federal operating unit comprising Bright Rock's leasehold interests in the vicinity of the well.

11.      As such, Bright Rock seeks declaratory relief that can assist the parties in avoiding such injuries, and, in the event injuries are nevertheless sustained, Bright Rock seeks damages to the extent they can be quantified.

**PARTIES**

12.      Plaintiff Bright Rock Energy LLC is a limited liability company with citizenship, through its LLC members, in Colorado, Wyoming, and Germany.

13.      Defendant CNOOC Energy U.S.A. LLC is a limited liability company organized under the laws of Delaware with its principal place of business located at 945 Bunker Hill Road,

Suite 1000, Houston, Texas 77024.  Upon information and belief, Defendant CNOOC Energy U.S.A. LLC's sole member is CNOOC Energy Holdings U.S.A. Inc., which is a corporation organized under the laws of Delaware with a principal place of business in Texas.

## JURISDICTION AND VENUE

14.     The Court has subject-matter jurisdiction of this civil action under 28 U.S.C. § 1332(a).  The Court has diversity jurisdiction over all claims, as complete diversity exists between the parties and the amount in controversy exceeds $75,000.00.  As described in more detail below, CNOOC is refusing to provide more than $5 million in contributions to drilling and completion costs.

15.     This Court's exercise of personal jurisdiction over CNOOC is consistent with Wyo. Stat. § 5-1-107(a), the due process clause of the Fourteenth Amendment, and otherwise.  CNOOC has sufficient contacts with the State of Wyoming and purposefully availed itself of the privilege of acting in this State by purchasing working interests in several oil and gas wells throughout this State.  Further, Bright Rock's cause of action arises from one such purchase in this State.  Finally, CNOOC reasonably anticipates lawsuits in this State given its substantial dealings, interests, and earnings here.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the agreement at issue concerns interests in real property located in this State.  In addition, CNOOC was to perform the agreement at issue in this State but has since repudiated.

## GENERAL ALLEGATIONS

**A.     CNOOC Agrees to Contribute to the Cost of Drilling the Buster Federal Well.**

17.     On May 28, 2019, Bright Rock's predecessor-in-interest, Panther Energy Company III, LLC ("Panther"), as oil and gas operator, and CNOOC, as working interest owner, entered into a letter agreement that gave CNOOC the option to elect to participate in certain wells

(i.e., contribute to their drilling and completion costs) in exchange for an increased working interest and net revenue interest in each.  (*See* Wellbore Participation Letter Agreement, dated May 28, 2019, ¶ 1 ("May 28, 2019 Agreement," attached hereto as Exhibit 1).)

18.     Specifically, CNOOC could elect to participate in the Wil E Coyote Federal Well, the Lucas Federal Well, the Grace Federal Well, and the Shultz Federal Well.  (*Id.*)

19.     Shortly thereafter, CNOOC elected to participate in the Wil E Coyote Federal Well and the Lucas Federal Well.  (*See, e.g.*, Wellbore Participation Letter Agreement, dated January 8, 2020, at 1 ("January 8, 2020 Agreement," attached hereto as Exhibit 2).)

20.     On February 6, 2020, Panther and CNOOC agreed to remove the Grace Federal Well and the Shultz Federal Well from the scope of the May 28, 2019 Agreement.  (*See* Amendment to May 28, 2019 Wellbore Participation Letter Agreement, dated February 6, 2020, at 1 ("Amendment to May 28, 2019 Agreement," attached hereto as Exhibit 3).)

21.     In lieu of those two wells, Panther and CNOOC added the Buster Federal Well and the Arthur Federal Well (collectively, with the Wil E Coyote Federal Well and the Lucas Federal Well, the "Subject Wells").  (*Id.*)

22.     That same day, February 6, 2020, Panther and CNOOC also entered into an agreement regarding CNOOC's election to participate in the Buster Federal Well.  (*See* Letter Agreement – Well Proposal, dated February 6, 2020, at 1 ("Buster Participation Agreement," attached hereto as Exhibit 4).)

23.     In the Buster Participation Agreement, CNOOC made a binding, irrevocable election to participate in the Buster Federal Well and agreed to pay a 49.00% working interest share of the $11,464,500.00 authority for expenditure ("AFE") associated with drilling and completing the Buster Federal Well.  (*Id.*, ¶ 2.) In exchange, Panther agreed to assign to CNOOC

an additional 42.750586% working interest in the Buster Federal Well; combined with CNOOC's existing 6.249414% working interest in said well, CNOOC's resulting working interest totaled 49.00%. (*Id.*, ¶ 4.)

**B.   The Buster Participation Agreement Contains No Timing Requirement to Begin Drilling the Well.**

24.   Although parties sometime choose to negotiate timing requirements in agreements to participate in a well, the Buster Participation Agreement contains no deadline or other timing provision for beginning to drill the Buster Federal Well.

25.   Instead, the Buster Participation Agreement contains timing provisions only concerning the invoicing and payment of drilling costs. In relevant part, the Buster Participation Agreement states that Panther may not deliver the invoice for the AFE sooner than thirty days prior to spudding the well (the first step in drilling a well), and once delivered, CNOOC must make payment within fifteen days. (*Id.* ¶ 2.) Only after those events, spudding must occur within 120 days. (*Id.* ¶ 3.)

26.   In addition, the Buster Participation Agreement expressly binds and benefits Panther and CNOOC and "their respective heirs, personal representatives, successors, and assigns." (*Id.* at 2.)

**C.   CNOOC Refuses to Perform the Parties' Contract.**

27.   As of the filing this Complaint, the Buster Federal Well has not yet been spud for a variety of reasons including, but not limited to, CNOOC's own obstruction.

28.   On July 24, 2020, Bright Rock acquired Panther's interest in the lands, leases, and permits pertaining to the Subject Wells (including the Buster Federal Well), as well as Panther's status as operator of those wells.

29.     Since that time, Bright Rock has diligently prepared to begin drilling the Buster Federal Well.

30.     In August and September of 2020, CNOOC notified Bright Rock that it did not want to see any drilling in 2020, citing market conditions caused by the pandemic.  Consistent with that request, CNOOC withheld its approval of the Underdog Deep Federal Unit until October 2020.  The formation of the Underdog Deep Federal Unit and CNOOC's joinder to the associated Unit Agreement were necessary steps before Bright Rock could begin drilling the Buster Federal Well.

31.     On September 30, 2020, CNOOC notified Bright Rock that CNOOC no longer intended to participate in the Buster Federal Well despite CNOOC's binding, irrevocable election to do so pursuant to the Buster Participation Agreement.  (*See* CNOOC Letter, dated September 30, 2020, at 1 ("September 30, 2020 Letter," attached hereto as Exhibit 5).)

32.     In no uncertain terms, CNOOC stated it will not perform: ". . . CNOOC will not participate in the drilling of the Subject Well for the increased working interest as indicated in the [Buster Participation Agreement]." (*Id.*) CNOOC reiterated this position in subsequent correspondence in December 2020.

33.     CNOOC's September 30, 2020 Letter stated three reasons for its decision: (a) the Buster Participation Agreement was "over 230 days old"; (b) the operators changed, "which occurred without CNOOC's knowledge"; and (c) commodity prices had decreased.  (*Id.*)

34.     CNOOC's offered reasons to avoid its performance of the Buster Participation Agreement are not valid.

35.     The Buster Participation Agreement contains no deadline by which Bright Rock must spud the Buster Federal Well and there is no expiration date on CNOOC's binding,

irrevocable election to participate in such well.  CNOOC's own obstruction and requests to postpone drilling have contributed in great part to the delay in Bright Rock's spudding of the Buster Federal Well, and CNOOC's invalid attempt to revoke its election to participate in the Buster Federal Well and avoid its performance of the Buster Participation Agreement has created a cloud of uncertainty that has further delayed Bright Rock's efforts to spud the Buster Federal Well. Further, by its express terms, the Buster Participation Agreement was freely assignable, and the benefits thereunder inure to Bright Rock as the successor and assign of Panther.  Finally, a purported change in market conditions does not excuse performance.  Had CNOOC desired to have the ability to revoke its election to participate based on changing market conditions, it could have negotiated for such a provision in exchange for consideration to Panther, such as a decreased share of net revenue interests.

**D.     The Present Dispute**

36.     Bright Rock intends to proceed with the drilling and completion of the Buster Federal Well.  Because CNOOC made a binding, irrevocable election to participate in the Buster Federal Well, Bright Rock seeks to have CNOOC abide by its obligation to pay 49% of the drilling and completion costs.

37.     Accordingly, Bright Rock seeks a declaratory judgment holding that CNOOC is still bound by the obligations it made in the Buster Participation Agreement.

38.     Given CNOOC's valid and existing obligations, Bright Rock also seeks CNOOC's specific performance of the Buster Participation Agreement.  There is no uncertainty as to CNOOC's obligation to pay its share of the drilling and completion costs, and money damages for CNOOC's refusal to perform would be inadequate.  Absent CNOOC's specific performance, Bright Rock will suffer great harm, including possibly losing its leases located in the Underdog Deep Federal Unit for failing to drill within the time period required by those leases, and likewise

losing its status as operator of the Underdog Deep Federal Unit in which the Buster Federal Well is located.  No third parties would be harmed by requiring CNOOC to perform.  Meanwhile, CNOOC has only indicated that it does not *want* to perform, not that it *cannot* perform.

39.     If this Court does not require CNOOC to perform its valid and existing obligations, Bright Rock alternatively seeks to hold CNOOC liable for repudiating the Buster Participation Agreement and damaging Bright Rock.  The precise amount of damages will be proven at trial.

**FIRST CLAIM FOR RELIEF**
**Declaratory Judgment, 28 U.S.C. §§ 2201, 2202**

40.     Bright Rock hereby incorporates by reference all allegations set forth above as if fully set forth herein.

41.     The Buster Participation Agreement is a valid contract.

42.     This case presents an actual, justiciable case and controversy because Bright Rock has a live dispute with CNOOC about whether CNOOC must perform its obligations under the contract.

43.     This Court may effectively operate upon this dispute and may prevent further injury by declaring the parties' rights and obligations under the agreement—namely, that CNOOC's performance is not excused and that it must abide by its obligation to contribute the agreed-upon share of the drilling and completion costs for the Buster Federal Well.

44.     The judicial determination of the parties' rights and obligations will have the full force and effect of a final judgment.

45.     These proceedings are genuinely adversarial—Bright Rock wants CNOOC to perform, whereas CNOOC refuses.

## SECOND CLAIM FOR RELIEF
### Specific Performance

46.     Bright Rock hereby incorporates by reference all allegations set forth above as if fully set forth herein.

47.     The Buster Participation Agreement is a valid contract, CNOOC's excuses for not performing are invalid, and the special equities of the situation demand CNOOC's specific performance.

48.     There is no uncertainty as to CNOOC's obligation to provide the bargained-for capital contribution pursuant to the Buster Participation Agreement.

49.     Damages for CNOOC's breach are inadequate and impractical given the circumstances.  The Buster Participation Agreement provides Bright Rock with the consideration that it needs, and absent specific performance, Bright Rock will suffer great harm, including very possibly losing its leases located in the Underdog Deep Federal Unit for failing to drill within the time period required by those leases, and likewise losing its status as operator of the Underdog Deep Federal Unit in which the Buster Federal Well is located.  In addition, upon information and belief, CNOOC *can* perform its obligations.  Finally, no third parties would be harmed by CNOOC's specific performance.

## THIRD CLAIM FOR RELIEF
### Anticipatory Repudiation

50.     Bright Rock hereby incorporates by reference all allegations set forth above as if fully set forth herein.

51.     The Buster Participation Agreement is a valid contract, and CNOOC's excuses for not performing are invalid.  Nonetheless, CNOOC clearly and seriously manifested that it will not perform any of its obligations under the contract.

52.     The repudiation is sufficiently positive to be reasonably understood that CNOOC's breach will actually occur—CNOOC's statements and conduct are not merely expressions of doubt.

53.     As a result, if Bright Rock cannot secure CNOOC's specific performance, Bright Rock is entitled to recover damages for total breach in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bright Rock respectfully requests that the Court enter judgment in its favor and against Defendant CNOOC and grant relief as follows:

A.     A declaration of the rights, status, and other legal relations and obligations of the parties as described in the First Claim for Relief above;

B.     CNOOC's specific performance of the Buster Participation Agreement as described in the Second Claim for Relief above;

C.     Alternatively, damages against CNOOC caused by CNOOC's anticipatory repudiation and thus breach of the contract as described in the Third Claim for Relief above, in an amount to be proven at trial;

D.     An award of costs and fees, including attorneys' fees, to the fullest extent permitted by law;

E.     Pre-judgment and post-judgment interest to the extent permitted by law;

F.     Such further relief as the Court deems proper.

Dated: February 19, 2021

*s/ Rachael Lechner*

Rachael Lechner, WY Bar No. 7-4568
Lamont Larsen, WY Bar No. 7-5596
(admission pending)
Mark Champoux (*pro hac vice* pending)
Omeed Azmoudeh (*pro hac vice* pending)
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado, 80202
Telephone:  303.892.9400
Facsimile: 303.893.1379
Email: rachael.lechner@dgslaw.com
          lamont.larsen@dgslaw.com
          mark.champoux@dgslaw.com
          omeed.azmoudeh@dgslaw.com

*Attorneys for Plaintiff Bright Rock Energy LLC*